959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard KELBY, Mabel Kelby, parents of Richard Robert Kelby;
Richard Robert Kelby, Plaintiffs-Appellants,
v.
MORGAN HILL UNIFIED SCHOOL DISTRICT, Defendant-Appellee.
 No. 91-15419.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1992.
Decided April 1, 1992.
 
 Before WISDOM,* BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The Kelbys appeal the district court's judgment affirming the school district's determination that Richard Kelby was ineligible to receive special education benefits pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485 (1988). We have jurisdiction and we affirm.
 
 
 3
 * In 1988, Richard enrolled in a regular fifth grade class within the Morgan Hill Unified School District. His record there, as in his previous school district, reflects poor grades, behavior problems and inconsistent work habits.[1] The Kelbys found Richard's poor performance particularly troubling because tests have shown he has above-average intelligence. At the beginning of Richard's sixth-grade year, the Kelbys requested an assessment of and special education placement for Richard.
 
 
 4
 A school district IEP team evaluated Richard, as did an independent psychologist employed by the Kelbys. The two assessments disagreed as to the basic cause of Richard's problems. The independent psychologist, Dr. Mark Steinberg, concluded that Richard had a specific learning disability and deficits in visual memory and visual motor domain areas. The school district concluded that Richard had a behavior problem not caused by a learning disability. The school district determined that Richard was not eligible for special education assistance.
 
 
 5
 The Kelbys disagreed and requested a due process hearing. The hearing officer's decision, issued in May 1990, stated that Richard was not eligible for special education because he did not have a severe discrepancy between his ability and his achievement. Additionally, the hearing officer concluded that Richard did not have a disorder in a basic psychologic process, such as visual memory. In reaching these conclusions, the hearing officer specifically found the school district's experts to be more persuasive than the Kelbys' expert.
 
 
 6
 The Kelbys then obtained an independent educational and psychological evaluation from Children's Health Council (CHC). This evaluation concludes that Richard has an auditory processing deficit which results in difficulties in writing, spelling and reading. CHC recommended that "Richard receive appropriate resource specialist support services."
 
 
 7
 The Kelbys appealed the hearing officer's decision to the district court. The district court considered written and oral testimony of expert witnesses, teachers and the Kelbys. The court recognized the credibility of the CHC and the "compelling nature" of its evaluation; nonetheless, it found that the IEP evaluation was not flawed and that Richard did not qualify for special education.
 
 II
 
 8
 The Kelbys challenge the district court's ruling that "Richard is not disabled within the definition of the Act." This mixed question of law and fact is primarily factual, and thus we review for clear error. Gregory K. v. Longview School Dist., 811 F.2d 1307, 1311, 1312 (9th Cir.1987) (question whether student has a learning disability or is mentally retarded reviewed for clear error). In reviewing the underlying administrative determination, "we must grant deference to the sound judgment of the various state educational agencies." Wilson v. Marana Unified School Dist. No. 6, 735 F.2d 1178, 1183 (9th Cir.1984); see also Gregory K., 811 F.2d at 1310-11 (discussing the role of deference). We also must bear in mind that the IDEA does not require schools to provide special education benefits merely because those benefits would help maximize a child's potential. Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982) (concluding that school district need not provide a sign language interpreter to a deaf student who was doing well in school, although not as well as she could be).
 
 
 9
 The IDEA's coverage includes children with "specific learning disabilities ... who, by reason thereof require special education and related services." 20 U.S.C. § 1401(a)(1) (Supp. II 1990). State regulations define the covered disabilities, and these regulations may go beyond the federal minimum. Town of Burlington v. Dept. of Educ., 736 F.2d 773, 784-85 (1st Cir.1984), aff'd sub nom. Burlington School Comm. v. Dept. of Educ., 471 U.S. 359 (1985). The relevant California provision states:
 
 
 10
 A pupil shall be assessed as having a specific learning disability which makes him or her eligible for special education and related services when it is determined that all the following exist:
 
 
 11
 (a) A severe discrepancy exists between the intellectual ability and achievements in one or more of the following academic areas:
 
 
 12
 (1) Oral expression.
 
 
 13
 (2) Listening comprehension.
 
 
 14
 (3) Written expression.
 
 
 15
 (4) Basic reading skills.
 
 
 16
 (5) Reading comprehension.
 
 
 17
 (6) Mathematics calculation.
 
 
 18
 (7) Mathematics reasoning.
 
 
 19
 (b) The discrepancy is due to a disorder in one or more of the basic psychological processes and is not the result of environmental, cultural, or economic disadvantages.
 
 
 20
 (c) The discrepancy cannot be corrected through other regular or categorical services offered within the regular instructional program.
 
 
 21
 Cal.Educ.Code § 56337 (West 1989); see also Cal.Code Regs. tit. 5 § 3030(j); 34 C.F.R. 300.541.
 
 III
 
 22
 Citing to paragraph 14 of the district court's judgment, the Kelbys stress that the district court "found that Richard had a severe discrepancy between his ability and achievements ... found that Richard had an auditory processing disorder ... [and] found that Richard is learning disabled." This reflects a misreading of the judgment. In paragraph 14, the court summarized CHC's conclusions but did not incorporate them into the findings. As the court stated in paragraph 15, "[d]espite the compelling nature of this evidence [the CHC evaluation], the court finds it insufficient to compel the conclusion that the IEP evaluation is flawed." Read in context, it is apparent that the district court did not adopt as findings the CHC conclusions.
 
 
 23
 The district court was not unsympathetic to the Kelbys. In paragraph 16 of the judgment, the court states that it "cannot help but note that while Richard does not have a sufficient disability to qualify him for assistance under the Act, he does have deficits which should be addressed by the District and his parents." The court also noted that it "found unhelpful the attitude of the District that Richard's educational difficulties were caused by lack of sufficient assistance at home. This categorical assignment of blame has exacerbated the problem...."
 
 
 24
 The Kelbys' argument to this court focuses on the CHC evaluation and on the discrepancy between Richard's high potential and his low grades. CHC administered a variety of tests and documented a significant discrepancy between his abilities and achievement in written language. A CHC psychologist testified that Richard's behavior problems resulted from his efforts to cope with the stress associated with his learning disability.
 
 
 25
 The Kelbys argue that given Richard's above-average I.Q. score, his below-average grades indicate that he is not receiving the "appropriate education" the IDEA guarantees to each child with a disability. The point that this argument misses is that having an unsuccessful educational experience does not, in itself, qualify a student for special education. Not every student with a learning difficulty has a "specific learning disability." As set forth in the IDEA and implementing law, a student has a specific learning disability if three factors exist: a relevant "severe discrepancy" between ability and achievement, the discrepancy must result from a disorder in a psychological process, and the discrepancy must not be correctable through regular education. See Cal.Educ.Code § 56337 (West 1989).
 
 IV
 
 26
 The school district's argument focuses on its experts' evaluations and on teachers' comments about Richard's behavior problems and missing homework. The IEP team determined that there was not a statutorily defined "severe" discrepancy between Richard's achievement test scores and his ability test scores. A speech and language pathologist from the school district assessed Richard and found that he did not have auditory processing problems that hindered his ability to learn in a regular classroom. Richard's seventh-grade English teacher testified that Richard would have received a B or C instead of an F in her class if he had turned in his homework. Several teachers' comments echoed her statement that missing homework and behavior problems contributed to Richard's low grades.[2]
 
 
 27
 The California and federal regulations provide that "no single score" shall be used to determine eligibility for special education. Cal.Code Regs. tit. 5 § 3030(j)(4); 34 C.F.R. 300.532(3)(d). Therefore, the district court appropriately considered CHC's assessment with the school district's assessments and other evidence. As the district court found, the decision denying special education eligibility was "based upon sufficient evidence and sound application of appropriate legal principles." The preponderance of the evidence supports the finding that Richard's learning difficulties are not so severe that he cannot benefit adequately from the regular educational program. The district court's judgment is not clearly erroneous.
 
 V
 
 28
 Richard's parents request attorneys' fees pursuant to IDEA section 1415(e)(4)(B). Because they do not prevail here, they are not entitled to attorneys' fees. Gregory K., 811 F.2d at 1315.
 
 V
 
 29
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 From his kindergarten year through most of fourth grade, Richard was enrolled in the Gilroy Unified School District. This district determined that Richard had a specific learning disability. During his fourth-grade year, the Gilroy District provided him with a special education teacher, who worked with him for 30 minutes, four times a week, focusing on written language
 
 
 [2]
 We did not consider Richard's June 1991 report card